IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

LORETTA GOFFNEY o/b/o B.L.                                                    PLAINTIFF

VS.                                                    CIVIL ACTION NO. 4:09cv161-DPJ-FKB

MICHAEL J. ASTRUE, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court regarding the appeal by Loretta Goffney of the

Commissioner of Social Security's final decision denying Goffney's application for

Supplemental Security Income (SSI) benefits on behalf of a minor claimant, B.L.  In rendering

this Opinion, the Court has carefully reviewed the administrative record regarding Goffney's

claims (including the administrative decision, the medical records and a transcript of the hearing

before the Administrative Law Judge (ALJ)); Goffney's Motion for Summary Judgment [14] and

accompanying Memorandum [15]; the Defendant's Motion to Affirm the Decision of the

Commissioner [17] and accompanying Memorandum [18]; as well as Goffney's Reply to the

Defendant's Memorandum [19].  For the reasons discussed in this Memorandum Opinion and

Order, the Court finds that the Commissioner's decision is not supported by substantial evidence,

that the ALJ made errors of law, and that the matter should be remanded to the Commissioner

for reconsideration.  Accordingly, Plaintiff's Motion for Summary Judgment [14] is granted in

part, and the Defendant's Motion to Affirm the Decision [17] is denied.

I.        Facts and Procedural History

Plaintiff, Loretta Goffney, grandmother of the minor claimant, B.L., filed for SSI

disability benefits on behalf of B.L. on November, 25, 2005.  B.L. was born on September 2,

1993, and was just over the age of 12 at the time of filing.[1]   In his request for disability, the

claimant alleged that he was disabled as of November 25, 2005, because of problems with

migraines, attention deficit hyperactivity disorder (ADHD), schizophrenia, and depression.  Tr.

111.  The Social Security Administration denied her application initially and upon

reconsideration.  Goffney subsequently requested and received an administrative hearing.  The

ALJ held a video conference hearing on October 2, 2008, at which Goffney and B.L., who were

represented by counsel, appeared and testified.  On December 10, 2008, the ALJ issued a

decision finding that B.L. was not disabled from the time of filing, through the date of his

decision.  Thereafter, the Appeals Council denied the Goffneys's request for review, and the

ALJ's decision became the final decision of the Commissioner.   At the time of the hearing

decision, B.L. was 15 years old.

II.     Medical and Psychological History

        The Court has reviewed the records and although the medical history is well reflected in

the record, an overview of B.L.'s records will aid in the consideration of this case.  B.L. was

treated by the Newton Regional Clinic, Newton, Mississippi, for migraines on November 25,

2005, and December 7, 2005.  Tr. 168–169.  Those records state that he has a history of

schizophrenia and depression.  *Id.*  An MRI was scheduled for November 28, 2005, but the

results are either not published in the record or are illegible.  *Id.* at 169.  Other record treatment

notes and the hearing testimony reiterate his treatment for migraines.

---

[1]According to the record, B.L. has resided with Goffney since June 2005, when she
obtained custody of him.

On January 25, 2006, B.L. was examined by Dr. Jan P. Boggs following a referral from Disability Determination Services for a one-time psychological evaluation. Tr. 171–174. Dr. Boggs noted that B.L. was living apart from his mother, aged thirty, and that his father had been incarcerated for the last twelve years. She noted that B.L. was in the sixth grade and making Bs, Cs, and Ds, but that he had been suspended once for fighting. She noted that he took medicine for migraine headaches, and that the medication made him sleepy. Although she noted that he felt angry, had thoughts of self-harm at times, and was "unusually dysphoric for his age," he cooperated during the exam. To the Court, she painted a picture of a relatively happy child who interacted well with family and friends and was motivated in school. Nevertheless, Boggs diagnosed B.L. with depressive disorder, NOS; adjustment disorder with conduct problems; and migraine headaches. She concluded that B.L. is of average learning ability, enjoys reading, and is able to follow directions and perform routine tasks.

The record reflects that B.L. was treated by Weems Community Mental Health Center on a regular basis from September 2005 to July 2008.[2]  Tr. 203– 19. Contrary to Dr. Boggs's one-time assessment, these treatment records follow B.L. for a period of two and one-half years and chronicle a downward spiral of behavior, including treatment for depressive disorder, conduct disorder, asthma, and migraine headaches.[3]  During this time period, B.L. displayed aggressive, angry, and defiant behavior toward his peers, teachers, relatives, and authority figures. One evaluation notes that he spent the 2008 President's Day weekend in the Scott County Detention

---

[2]The Weems medical records date from January 2006, but Dr. Boggs noted that B.L. began treatment at Weems in September 2005.

[3]Ms. Goffney's hearing testimony reiterates the descent of B.L.'s behavior and conduct.

Center and that he was sentenced to probation and given a curfew, which he subsequently broke. *Id.* at 204.   Not only was he transferred between the local middle school and an alternative school on several occasions, but his grades fluctuated to the extent that he had to repeat seventh grade.  *Id.* at 242.  His hygiene level fell at various times to "poor" and "not good."  During this time, the medical providers at Weems treated him with various medications, including Risperdal, Clonidine, Seroquel, Depakote, Geodon, Prozac, Tenex, Strattera, and Abilify.  On two separate occasions, February 13, 2008, and July 29, 2008, his treating source at Weems recommended that he undergo long-term hospitalization.  *Id.* at 203, 205.  Throughout this time period, his GAF scores ranged between 40 and 50.[4]

On July 2, 2006, B.L. was admitted to Diamond Grove Center, Louisville, Mississippi, for treatment of anger and depression.  *Id.* at 187.  He had threatened his grandmother with a knife, which he later claimed was to hurt himself, not his grandmother.  *Id.*  The evaluating doctor noted that he had suicidal ideations, was out of control, and had heard voices.  In the discharge summary, the treating doctor diagnosed him with intermittent explosive disorder, mood disorder NOS, and aggression and gave him a GAF score of 39.  *Id.*  After keeping him for nine days, during which time the Center adjusted his medications, the treating doctor concluded he had "greatly improved" and was ready for discharge.  *Id.*

_____

[4]According to the Government's Memorandum, a GAF of 21–30 indicates behavior "considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment . . . OR inability to function in almost all areas."  Def.'s Mem. [18] at 8, nn. 3–4.  *(quoting Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000) (emphasis in original)).  A GAF of 41–50 indicates serious symptoms such as suicidal ideation, or any serious impairment in social, occupational, or school functioning, such as having no friends or being unable to keep a job.  *Id.*  A GAF of 51–60 indicates moderate symptoms such as flat affect or occasional panic attacks or moderate difficulty in social, occupational, or school functioning such as having few friends, or conflicts with peers or coworkers.  *Id.*

As part of his treatment at Diamond Grove Center, psychologist James B. Austin, Ph.D., performed an evaluation of B.L. on July 5, 2006, "in order to assess the need for long-term psychiatric care." *Id.* at 192–195. Dr. Austin diagnosed mood disorder NOS and intermittent explosive disorder, described Axis IV as "Severe: out of control," and gave B.L. a GAF score of 25. Dr. Austin stated that B.L. "requires extended residential care due to the chronic nature of severe emotional problems and failure to benefit from acute hospitalizations and outpatient therapy." *Id.* at 195.

The record contains a great number of disciplinary reports filed by teachers for conduct such as sleeping in class, lacking homework, disrupting class, defying authorities, and participating in altercations and fights. Tr. 231–250. His discipline file is described by the East Central Alternative School counselor as "very thick," and she provided only a "representative sample of his typical behavior" while at the school. *Id.* at 231. B.L. was suspended from East Central Alternative School for three days in April 2008 for refusing to mind and for a disrespectful attitude. *Id.* at 233. He was also suspended from Newton Public Schools in August 2008 for using obscene language and gestures. *Id.* at 248. The record culminates with documents describing several unexplained absences from school in September 2008. *Id.* at 251–253.

III.    Standard of Review

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied, 42 U.S.C. **§** 405(g) (2006). *Accord Falco v.*

5

*Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is: "such relevant evidence as a reasonable mind might accept to support a conclusion.  It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"

*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988 ) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  In applying the substantial evidence standard, the Court must carefully examine the entire record but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.  *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this Court.  *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

Finally, pursuant to 42 U.S.C. § 405(b)(1), an ALJ is "required to discuss the evidence offered in support of [the claimant's] claim for disability and to explain why she found [the claimant] not to be disabled" at a particular step.  *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).   The ALJ is "not always required to do an exhaustive point-by-point discussion."  *Id.*  But when the ALJ offers nothing to support her conclusion, "a reviewing court[] simply cannot tell whether her decision is based on substantial evidence or not."  *Id.* (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

If the record is not sufficient, then the reviewing court "must still determine whether this error was harmless." *Id*. (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988)). "'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Id.* (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

IV.     <u>Discussion of the Alleged Errors and Applicable Law</u>

Social Security Administration procedures for determining childhood disability require "a three-step process, under which the [ALJ] . . . must determine (1) that the child is not engaged in substantial gainful activity; (2) that the child has an impairment or combination of impairments that is severe; and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. § 404." *Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 84 (2d Cir. 2003). "In making the third determination—whether a child's impairment meets or equals a listed impairment—the ALJ must consider whether the impairment, alone or in combination with another impairment, medically equals, or functionally equals" an impairment listed in Appendix 1, Subpart P, of Social Security Regulation No. 4 (the "Listings"). *Id. See also* 20 C.F.R. § 416.924 (2010). To evaluate functional equivalence, "[t]he ALJ considers how a child functions in his activities 'in terms of six domains': '(I) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being.'" *Id.* (quoting 20 C.F.R. § 416.926a(b)(1)). "The regulations provide that a child must be found to be disabled if he or she has an impairment or

impairments of 'listing-level severity,' that is, an 'extreme' limitation in one of these domains, or 'marked' limitations in two or more domains."  *Id.* (quoting 20 C.F.R. § 416.926a(a)).

Following this three-step process, the ALJ determining B.L.'s disability found at step one that B.L. had "not engaged in substantial gainful activity at any time relevant to this decision." Tr. 11.  The ALJ determined at step two that B.L. had two severe impairments: oppositional defiant disorder and depression.  *Id.*  At the third step, the ALJ first found that neither of B.L.'s severe impairments medically equaled the Listings.  *Id.* at 12.  Then, the ALJ found that the impact of B.L.'s two severe impairments resulted in only a marked limitation in the sole domain of interacting and relating with others, and no limitations at all in the other domains.  *Id.* at 12–18.  With these findings, B.L.'s impairments did not functionally equal the Listings, and the ALJ therefore concluded that B.L. did not qualify for SSI benefits.  *Id.* at 18.

The issues on appeal, as found in the Brief in Support of Goffney's Motion for Summary Judgment [15], are quoted, as follows:

1. Did the Defendant Commissioner apply the proper legal standard for evaluating the Plaintiff's severe impairments?

2. Did the Defendant Commissioner properly consider the issue of presumptive disability by making a correct determination as to medical equivalence to an impairment listed in Appendix 1 of the Commissioner's Regulations?

3. Did the Defendant Commissioner properly consider the Plaintiff's functional limitations in all of the functional domains set forth by the Commissioner in his regulations and rulings?

4. Did the Defendant Commissioner give due consideration to expert medical opinion as to the severity of the Plaintiff's impairments?

5. Did the Defendant Commissioner properly evaluate credibility?

The Court will discuss these issues, in turn.

A.    Did the Defendant Commissioner apply the proper legal standard for evaluating the Plaintiff's severe impairments?

In the first issue, Goffney argues that the ALJ employed the wrong standard to evaluate the severity of B.L.'s migraine headaches and diagnosis of schizophrenia.  Goffney argues that although the ALJ cited to *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), and made this severity determination at the second step of the evaluation, this creates more than procedural, harmless error.  Goffney points out that the ALJ stated that B.L.'s migraines "have caused no more than minimal limitation in his ability to function" and went on to conclude, citing *Stone* and 20 C.F.R. § 416.924(c), that the migraines are not a severe impairment.  Goffney asserts that because the ALJ found that the migraines caused *at least* "minimal limitation in his ability to function," and *Stone* provides "no allowance for minimal interference on a claimant's ability to work," the ALJ's determination conflicts with *Stone*.   The government counters that because *Stone* concerned an adult standard of evaluating severity based upon its impact upon an adult claimant's ability to work, the *Stone* standard is inapposite to this case.

The Fifth Circuit stated in *Stone* that failure to specifically reference *Stone* or its explicit construction of non-severity would result in the Court's assumption that an incorrect severity standard had been applied and remand to the Secretary for reconsideration.  *Stone*, 752 F.2d at 1106.  Later, however, the Fifth Circuit clarified in *Burnside ex rel. Burnside v. Bowen*, that "*Stone*'s five-step evaluation procedure applies only to *adult* claimants, who must comply with regulations set out in 20 C.F.R. § 416.920, not to child claimants, whose disabilities are evaluated according to the procedure set out in [child disability regulations]."   845 F.2d 587,

591 (5th Cir. 1988) (emphasis in original).[5]  *Burnside* was abrogated on other grounds, but the

Fifth Circuit cited it in a later unreported decision for the proposition that "[r]egulations of the

Social Security Administration establish the criteria for whether a child's impairment constitutes

a compensable disability."  *Alexander v. Chater*, 95 F.3d 1148, at *1, (5th Cir. 1996) (citing

*Burnside*, 845 F.2d at 590); *accord Mapps v. Astrue*, No. 3:09-cv-2226, 2010 WL 1946662, at *9

n.8 (N.D. Tex. April 30, 2010).

Thus, the ALJ's use of the severity standard from 20 C.F.R. § 416.924, the regulation

governing disability standard for claimants under age 18, was the proper legal standard.

Goffney's arguments on this issue are without merit.

> B.      Did the Defendant Commissioner properly consider the issue of presumptive
>         disability by making a correct determination as to medical equivalence to an
>         impairment listed in Appendix 1 of the Commissioner's Regulations?

At the third step of the sequential disability evaluation process for claimants under age

18, the Commissioner must determine whether an applicant has an impairment or combination of

impairments which meets, or is medically equal to, an impairment set forth in the Listings.  An

individual who has medical signs and findings which meet or equal the requirements of a listed

impairment is presumed to be disabled and is entitled to benefits.  *See* 20 C.F.R. § 404.1525.

Although the ALJ "is responsible for deciding the ultimate legal question whether a

listing is met or equaled," "longstanding policy requires that the judgment of a physician (or

psychologist) designated by the Commissioner on the issue of equivalence on the evidence

before the administrative law judge or the Appeals Council must be received into the record as

---

[5]The *Burnside* opinion states that a child claimant's disabilities are evaluated according
to 20 C.F.R. § 416.923.  The current procedure for evaluating a child claimant's disabilities is
now set forth in 20 C.F.R. § 416.924.

expert opinion evidence and given appropriate weight." SSR 96-6p. One factor, among others, to be considered in weighing the opinions of State agency consultants is "the supportability of the opinion" in the face of "evidence received at the [ALJ level] that was not before the State agency." *Id.*

In the case at hand, Goffney argues that the ALJ failed to evaluate properly whether B.L. met Listings 112.04 and 112.08. Indeed, the section of the ALJ decision devoted to the medical equivalence of B.L.'s impairments consists of a four-sentence paragraph. Unlike the ALJ in *Audler*, the ALJ reviewing Goffney's complaint did identify the two Listings that he reviewed; however, like the ALJ in *Audler*, the ALJ reviewing Goffney's complaint did not explain the basis for his conclusions, leaving this Court in the same position lamented in *Audler*—a position in which "we, as a reviewing court, simply cannot tell whether [the ALJ's] decision is based on substantial evidence or not." *Id.* 501 F.3d at 448.

Although the State agency did refer B.L. to Dr. Boggs for psychological evaluation conducted in January 2006, the majority of B.L.'s medical and school records span the period following Dr. Bogg's evaluation—from March 2006 to September 2008. This two-and-a-half-year period includes records of repeating the 7th grade, ongoing treatment at the Weems Mental Health Center, two recommendations for long term hospitalization, admission to Diamond Grove Center in Louisville, Mississippi, for treatment of anger and depression, a weekend stay at the Scott County Detention Center in 2008, and portions of a "very thick" file from East Central Alternative School of which the Court was provided only a sample. In all, the Medical Record Synopsis lists in chronological order 37 separate dated events, ranging from mental health office

11

visits to unexcused absences at school.  Thirty-two of those events occurred after Dr. Boggs's opinion.

Given the volume of documentation concerning B.L.'s medical treatment for anger and depression and the fact that the ALJ found enough evidence in the record to conclude that B.L. has severe impairments of oppositional defiant disorder and depression, the ALJ's failure to better explain his conclusions on the medical equivalence of B.L.'s impairments to the Listings is an error which affects B.L.'s substantial rights.  *See Audler*, 501 F.3d at 449 ("Absent some explanation from the ALJ to the contrary, [the claimant] would appear to have met her burden of demonstrating that she meets the Listing requirements . . . and therefore [the claimant's] substantial rights were affected by the ALJ's failure to set out the bases for [the] decision at step three.").  To be clear, the Court has not reweighed the evidence.  But the record presented is insufficient to determine whether all of the evidence was considered and whether the ruling was supported by substantial evidence.

On remand, the ALJ should set forth the reasoning for his conclusions on the medical equivalence of *all* of B.L.'s impairments, individually and in combination.  Also, on remand, the ALJ should obtain an updated expert medical opinion which includes a review of B.L.'s entire disability record for the period in question.[6]

---

[6]In addition, Dr. Boggs examined B.L. before the vast majority of documented events in the record.  In fact, the ALJ gave only "some weight" to Dr. Boggs's evaluation, finding upon review of the record that B.L.'s problems in interacting with others was "more severe that the consultant concluded."  Tr. 13.  It appears to the Court that a duty exists to update Dr. Boggs's opinion in light of SSR 96-6p, which provides that

> . . . an [ALJ] *must* obtain an updated medical opinion from a medical expert. . . When additional medical evidence is received that in the opinion of the [ALJ] may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent

C.    Did the Defendant Commissioner properly consider the Plaintiff's functional limitations in all of the functional domains set forth by the Commissioner in his regulations and rulings?

As to the Plaintiff's third issue, it appears that the ALJ either failed to consider all of B.L.'s limitations in all of the functional domains or failed to explain the ruling.  As stated above, in order for a child to be found disabled at the SSI hearing, the ALJ must find "'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Encarnacion*, 331 F.3d at 84 (citing 20 C.F.R. § 416.926a(a)).  A "marked" limitation in a particular domain "interferes seriously" with the child's "ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  Social Security regulations also describe a "marked" limitation as one that is "more than moderate" but "less than extreme."  *Id.* An "extreme" limitation is one that is "more than marked" and "interferes very seriously with" the child's "ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

When reviewing the evidence in the record, "the ALJ must consider *all* the record evidence and cannot 'pick and choose' only the evidence that supports his position."  *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citations omitted) (emphasis added).  An ALJ's failure to acknowledge significant evidence can support a finding that the ALJ's decision "is not supported by substantial evidence on the record as a whole."  *Id.* at 396 (finding that "[t]he ALJ's failure to recognize the existence and significance of . . . cogent evidence . . .

_____

in severity to any impairment in the Listing of Impairments.

SSR 96-6p (July 2, 1996) (emphasis added).  The fact that the ALJ found B.L.'s impairment more severe than concluded by Dr. Boggs implies that the ALJ sensed that the consultant's evaluation may very well have been out of date.

demonstrates that the administrative determination is not supported by substantial evidence on the record as a whole"). Further, "[t]he ALJ has a duty to develop the facts fully and fairly related to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy this duty, his decision is not substantially justified." *Id.* The Court will address the findings as to each domain addressed in Goffney's appeal.

I.    Acquiring and Using Information

The first domain reviewed by the ALJ was that of acquiring and using information. This domain considers "how well [claimants] acquire or learn information, and how well [they] use the information [they] have learned." 20 C.F.R. § 416.926a(g). For an adolescent, the regulations state:

> In middle and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). You should also be able to use what you have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). You should also learn to apply these skills in practical ways that will help you enter the workplace after you finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).

After re-stating the regulations, the ALJ's analysis consisted of the following paragraph:

*"The claimant has no limitation in acquiring and using information.* The claimant's IQ scores show the claimant functions in the average range of intellectual functioning." Tr. 14. The ALJ did not address testing conducted by Dr. Austin showing, among other things, "significant limitations of concrete thinking" and a tendency "to make little use of what available intellectual resources exist." It also reflects no consideration of Goffney's testimony that B.L. is not able to

14

use the library or make it through a job interview.  Also absent from the analysis is any reference

to the facts that B.L. repeated the seventh grade and, according to Goffney, "usually fails classes

on his report card."

        ii.        Attending and Completing Tasks

      The second domain addressed by the ALJ was that of attending and completing tasks.

This domain considers how well claimants are "able to focus and maintain [their] attention, and

how well [they] begin, carry through, and finish . . . activities, including the pace at which [they]

perform activities and the ease with which [they] change them."  20 C.F.R. § 416.926a(h).  With

respect to B.L.'s age group, the regulations state:

> Adolescents (age 12 to attainment of age 18).  In your later years of school, you
> should be able to pay attention to increasingly longer presentations and
> discussions, maintain your concentration while reading textbooks, and
> independently plan and complete long-range academic projects.  You should also
> be able to organize your materials and to plan your time in order to complete
> school tasks and assignments. In anticipation of entering the workplace, you
> should be able to maintain your attention on a task for extended periods of time,
> and not be unduly distracted by your peers or unduly distracting to them in a
> school or work setting.

20 C.F.R. § 416.926a(h)(2)(v).

      The ALJ's analysis of the record and conclusion on this domain was very brief: "*The*

*claimant has no limitation in attending and completing tasks.*  The claimant can complete

assignments and chores around the home."  Tr. 15.  This analysis does not include consideration

of B.L.'s repeated placement in alternative school due to an inability to attend regular school or

B.L.'s documented truancy from alternative school.  Likewise absent is reference to the

substantial record of school related issues or Goffney's testimony that B.L. is non-compliant

with her instructions even after multiple requests.

iii.     Caring for Yourself

The domain of caring for yourself considers "how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health . . . ."  20 C.F.R. § 416.926a(k)(1).  These considerations are affected by the claimant's age.  School-age children (age 6 to attainment of age 12)

> should be independent in most day-to-day activities (*e.g.*, dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

20 C.F.R. § 416.926a(k)(2)(iv).  Adolescents (age 12 to attainment of age 18), the group B.L matches,

> should feel more independent from others and should be increasingly independent in all of your day-to-day activities. You may sometimes experience confusion in the way you feel about yourself. You should begin to notice significant changes in your body's development, and this can result in anxiety or worrying about yourself and your body. Sometimes these worries can make you feel angry or frustrated. You should begin to discover appropriate ways to express your feelings, both good and bad (e.g., keeping a diary to sort out angry feelings or listening to music to calm yourself down). You should begin to think seriously about your future plans, and what you will do when you finish school.

20 C.F.R. § 416.926a(k)(2)(v).  Finally, the regulations cite as an example of limited functioning in caring for yourself, "You do not dress or bathe yourself appropriately for your age because you have an impairment(s) that affects this domain."  20 C.F.R. § 416.926a(k)(3)(iii).

16

Here, the ALJ reasoned and concluded as follows: "*The claimant has no limitation in the ability to care for himself.* There is no evidence that shows a limitation in this domain." Tr. 17. This finding, fails to acknowledge and address the multiple reports of B.L.'s poor hygiene habits. At the hearing, Goffney testified that B.L. doesn't "brush his teeth . . . take a bath, or shower, or anything." Tr. 39. A disability report noted that Goffney "ha[d] to tell [B.L.] to take [a] bath and change his underwear." Tr. 126. Likewise, B.L.'s treatment records reflect hygiene issues. Tr. 215–216.

iv.     Health and Physical Well-being

The domain of health and physical well-being considers

> the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning that we did not consider in paragraph (j) of this section. When your physical impairment(s), your mental impairment(s), or your combination of physical and mental impairments has physical effects that cause "extreme" limitation in your functioning, you will generally have an impairment(s) that "meets" or "medically equals" a listing.

20 C.F.R. § 416.926a(I). The regulations specifically state that "the medications you take (*e.g*., for asthma or depression) or the treatments you receive (*e.g*., chemotherapy or multiple surgeries) may have physical effects that also limit your performance of activities." 20 C.F.R. § 416.926a(I)(2).

The ALJ opined that "[t]*he claimant has no limitation in health and physical well-being. There is no evidence that shows a limitation in this domain.*" Tr. 18. Like the previous analyses, the ALJ's opinion on this domain includes no consideration of record evidence. For example, Goffney testified that one of the side-effects of B.L.'s medications was drowsiness. B.L. himself testified that his medicine makes him drowsy. School records indicate that B.L. has been disciplined on more than one occasion for sleeping in class. Tr. 236, 240–241.

17

v.      Interacting and Relating with Others

The domain of interacting and relating with others is the domain where the ALJ found "marked" limitation, noting that B.L.'s behavior is "controllable, if he so chooses." Tr. 16. The ALJ does not explain this conclusion and does not assess the impact of B.L.'s marked limitation in this domain on the other five domains, a consideration that should be made under Social Security Ruling 09-5p.[7]

In sum, the ALJ's analysis as to these domains leaves the Court with no basis for determining whether the ruling was supported by substantial evidence or whether he considered all of the evidence.  It is also not apparent how the ALJ considered the combination of impairments, including those that are not severe, in light of the domains.  20 C.F.R. 416.926a(a). Again, to be clear, the Court has not reweighed the evidence.  It may be that the ALJ was correct.  But given the substantial record upon which Goffney relies, the ALJ must explain the analysis in a way that allows the Court to review the finding.  *Audler*, 501 F.3d at 449.  The evidence not considered by the ALJ could ultimately support a finding of disability on the part of B.L.; therefore B.L.'s substantial rights have been affected.  *Id.*  Remand for reconsideration is appropriate.

D.      Did the Defendant Commissioner give due consideration to expert medical

_____

[7]The Court is also concerned that the record should be more fully developed to determine whether B.L.'s limitation in this domain is "marked" or "extreme."  The transcript of the hearing reflects that the documents produced by B.L.'s school are a sampling from a "very thick" file. Tr. 21–22.  B.L.'s attorney addressed this concern at the hearing, but the ALJ felt that the missing evidence would not be necessary.  *Id.*  But, if the numerous records produced are only a sampling of a "very thick file," the missing documents may very well illustrate a depth to B.L.'s impairment that is not evident from a sampling.  Therefore, as part of the ALJ's responsibility to develop the record, B.L.'s entire school file should be subpoenaed and reviewed by the ALJ on remand.

18

opinion as to the severity of the Plaintiff's impairments?

It appears that the ALJ failed to give due consideration to the expert medical opinion evidence.  The Fifth Circuit has held that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability."  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  The treating physician's opinions are far from conclusive, however, because the ALJ has the sole responsibility for determining disability status. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994).  "Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions [the court] has recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence."  *Id.*  But the ALJ "cannot reject a medical opinion without an explanation."  *Loza*, 219 F.3d at 395 (citing *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 2980); *Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir. 1979)).

In this case, the ALJ's opinion diminished or ignored the opinions of treating and examining medical providers without explanation.  In particular, the ALJ did not appear to consider the treating providers' opinions as they related to the domains of acquiring and using information, attending and completing tasks, caring for yourself, and health and physical well-being.  Because the ALJ did not explain these decisions or demonstrate good cause, this matter should be remanded.

> E.       Did the Defendant Commissioner properly evaluate credibility?

Finally, Goffney argues that the ALJ failed to evaluate properly the credibility of the claimant and his grandmother.  Social Security Ruling 96-7p provides that "[w]hen evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."  SSR 96-7p (July 2, 1996).  The ruling further provides that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Id.*

Because the Court has determined that remand is required, and in the light of the record evidence not properly addressed or considered by the ALJ, the Court directs the ALJ to more fully address the credibility of the Plaintiff and claimant based upon the directives of this opinion.

V.     Conclusion

The undersigned finds that this case should be remanded for evaluation consistent with this Memorandum Opinion and Order.  Accordingly, the Plaintiff's Motion for Summary Judgment is hereby granted in part, and the Defendant's Motion to Affirm the Decision is denied.

**SO ORDERED AND ADJUDGED** this the 31th day of March, 2011.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE